*E-Filed 10/10/13*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHRISTOPHER L. GRIFFITH,

           Petitioner,

  v.

BRENDA M. CASH, Warden,

           Respondent.

_____ /

No. C 11-1005 RS (PR)

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

     Petitioner seeks federal habeas relief from his state convictions. For the reasons stated herein, the petition for such relief is DENIED.

## BACKGROUND

     In 2008, a Monterey County Superior Court jury convicted petitioner of voluntary manslaughter, consequent to which he was sentenced to 21 years in state prison. Petitioner was denied relief on state judicial review. This federal habeas petition followed.

     Evidence presented at trial shows that petitioner shot and killed Horacio Ramos Ramirez during a methamphetamine purchase in 2005. At trial, petitioner asserted both that he killed Ramirez in self-defense during a struggle for the gun, and that the gun discharged

United States District Court
For the Northern District of California

accidentally.

As grounds for federal habeas relief, petitioner alleges that: (1) the trial court put him twice in jeopardy; (2) the jury did not find him guilty beyond a reasonable doubt; (3) trial court rulings deprived him of due process; (4) defense counsel rendered ineffective assistance; (5) appellate counsel rendered ineffective assistance; and (6) the prosecutor committed misconduct.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

United States District Court
For the Northern District of California

*Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

## I.    Double Jeopardy

During jury selection, before alternates had been selected, a juror was dismissed for reasons of hardship, pursuant to the stipulation of all parties.  (Ans., Ex. 3, Vol. 7 at 6607.)  The trial court "proceed[ed] to select four alternates . . . [then,] at random, select[ed a replacement juror]."  (*Id.* at 6904.)  Petitioner claims that trial court's replacement of the first sworn juror placed him twice in jeopardy.

He raised this issue first on collateral review to the state supreme court, which summarily and without citation, denied review.  When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  This review is not a "de novo review of the constitutional issue"; rather, it is the only way a federal court can determine whether a state-court decision is objectively unreasonable where the state court is silent.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

The Double Jeopardy Clause bars successive prosecutions of a criminal defendant who has been acquitted or convicted.  *Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006).  The protections, however, apply "only if there has been some event, such as an acquittal, which terminates the original jeopardy."  *Richardson v. United States*, 468 U.S. 317, 325 (1984) (citation omitted).  The "event" terminating jeopardy must be as significant as an acquittal – even the failure of a jury to reach a verdict is not sufficient to terminate the

original jeopardy.  *See id.* at 325.

Habeas relief is not warranted here.  If a mistrial cannot terminate jeopardy, the trial court's replacement of jurors before evidence was presented cannot have terminated petitioner's original jeopardy.  Because jeopardy never terminated, petitioner's claim fails.  Based on an independent review of the record, petitioner has not shown the absence of a reasonable basis for the state court to deny relief.  Nor is there anything in the record to show that the decision was objectively unreasonable.  Accordingly, this claim is DENIED.

## II.     Alleged Juror Misconduct

According to petitioner, a newspaper reported that the jury foreperson stated the following after and about the trial:  "It was hard; it was not easy.  The evidence did not show malice[, and therefore precluded a finding of murder;] however, because of the use of the gun and the involvement of drugs the jury was unwilling to completely acquit [the petitioner]." (Pet. at 21.)  Petitioner infers from these statements that he was "not convicted because he committed voluntary manslaughter," but rather because of his involvement with drugs and guns.  (*Id.*)  His claim, then, is that the jury failed to find him guilty of voluntary manslaughter beyond a reasonable doubt.  (*Id.* at 16.)  Because this issue was raised first on collateral review to the state supreme court, this Court will conduct an independent review of the record to determine whether the state court decision is objectively unreasonable.

Habeas relief is not warranted here.  The foreperson's alleged statements relate to intrinsic trial matters.  Evidence regarding intrinsic trial matters, such as a jury's deliberations concerning evidence presented at trial, cannot be the basis of inquiry by this Court.  *See Raley v. Ylst*, 470 F.3d 792, 803 (9th Cir. 2006).  Based on an independent review of the record, petitioner has failed to show that there was no reasonable basis for the state court to deny relief.  Nor is there anything in the record to show that the decision was objectively unreasonable.  Accordingly, this claim is DENIED.

## III.     Alleged Trial Court Errors

United States District Court
For the Northern District of California

Petitioner alleges that erroneous trial court rulings warrant habeas relief.  He asserts that the trial court violated his constitutional rights by (A) violating his Sixth Amendment rights as they are articulated in *Cunningham v. California*, 549 U.S. 270 (2007); (B) improperly admitting and (C) excluding evidence; (D) engaging in judicial misconduct; (E) denying his motion for self-representation; and (F) denying his motion for continuance.

**A.      Cunningham Claim**

Petitioner, who was sentenced in 2008, claims that the trial court violated his Sixth Amendment rights by sentencing him to the maximum term allowable without a prerequisite jury finding.  Because this issue was raised first on collateral review to the state supreme court, this Court will conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable.

In *Cunningham*, the Supreme Court concluded that California's sentencing procedure, which allowed a trial judge to find aggravating factors necessary to give longer prison terms, violated the Sixth Amendment.  549 U.S. 270 (2007).  "[F]ollowing *Cunningham*, the California legislature amended its statutes such that imposition of the lower, middle, or upper term is discretionary, and does not depend on . . . aggravating factors."  *Butler v. Curry*, 528 F.3d 624, n. 20 (9th Cir. 2008).  Under this March 30, 2007 amendment, California Penal Code § 1170(b) provides that "when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."

Habeas relief is not warranted here.  Petitioner's reliance on *Cunningham* is unavailing because he was sentenced in May 2008, well after the March 2007 amendment. His sentence, then, does not fall afoul of *Cunningham*.  Based on an independent review of the record, petitioner has not shown that a reasonable basis for the state court to deny relief is lacking.  Nor is there anything in the record to show that the decision was objectively unreasonable.  Accordingly, this claim is DENIED.

**B.      Admission of Evidence**

United States District Court
For the Northern District of California

11-1005 RS (PR)
ORDER DENYING PETITION

1    Petitioner asserts that the trial court violated his due process rights by allowing the

2  prosecutor to cross-examine him about his tattoo, which states "Thug for Life."  This

3  evidence, according to petitioner, was irrelevant and overly prejudicial, and constituted

4  improper propensity or character evidence.

5    The state appellate court found the tattoo evidence relevant, and rejected this claim:

6    Evidence of [petitioner]'s tattoo was relevant circumstantial evidence.
     [Petitioner]'s counsel did not articulate any particular prejudice below.  The
7    tattoo was not gruesome or shocking; it was not likely to elicit an irrational or
     undue emotional response from the jurors.  The only potential prejudice was its
8    possible use as disposition or propensity evidence, which tends to be overly
     persuasive.
9
     Here, defense counsel did not identify any particular prejudice regarding
10   [petitioner]'s potential tattoo testimony but emphasized that it was absolutely
     irrelevant and immaterial to the issues.  It is evident from the [trial] court's
11   comments that it found the evidence had probative value and implicitly did not
     find the tattoo evidence, insofar as admissible under its limited preliminary
12   determination, more prejudicial than probative.

13  (Ans., Ex 8 at 29) (citations omitted).

14    Habeas relief is not warranted here because no remediable constitutional violation

15  occurred.  A federal habeas petitioner's due process right concerning the admission of

16  propensity evidence is not clearly established for purposes of review under AEDPA, the

17  Supreme Court having reserved this as an open question.  *Alberni v. McDaniel*, 458 F.3d 860,

18  866–67 (9th Cir. 2006).

19    Petitioner's related contention that the prejudicial effect of the evidence outweighed

20  its probative value also fails.  First, the Supreme Court "has not made a clear ruling that

21  admission of irrelevant or overtly prejudicial evidence constitutes a due process violation.

22  *Holley v.Yarborough*, 568 F.3d 1901, 1101 (9th Cir. 2009).  Second, the admission of

23  evidence is not subject to federal review unless a specific constitutional guarantee is violated

24  or the error is of such magnitude that the result is a denial of the fair trial guaranteed by due

25  process.  *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).  Only if there are no

26  permissible inferences that the jury may draw from the evidence can its admission violate

27  due process. *Jammal v. Van De Kamp*, 926 F.2d 918,920 (9th Cir. 1991).

28

United States District Court
For the Northern District of California

1    Here, the jury could draw permissible inferences about petitioner's state of mind, as

2    the state appellate court concluded:  "[Petitioner's tattoo] was circumstantial evidence of his

3    state of mind . . . at the time he was tattooed, which in turn had some . . . value regarding his

4    state of mind at the time of the subsequent killing."  (Ans., Ex. 8 at 32.)  Because the state

5    appellate court's rejection of the record petitioner's claims was reasonable, this claim is

6    DENIED.

7    **C.    Exclusion of Evidence**

8    Petitioner claims that the trial court violated his right to due process by excluding

9    evidence intended to impeach the testimony of the prosecution's witness, Deputy Camacho,

10   who worked at Monterey County Jail, where petitioner was detained after his arrest.

11   Petitioner sought to impeach Camacho by admitting evidence that at the time of trial he was

12   on administrative leave owing to his arrest for domestic violence.

13   At trial, Deputy Camacho testified that during an outburst in his cell petitioner said,

14   "You don't know who you're fucking with.  I'm a murderer.  I kill people like you."  (Ans.,

15   Ex. 3, Vol. 11 at 7909.)  Another deputy, Snell, testified that he had heard petitioner say,

16   "I'm a murderer.  I'm in here for murder."  (*Id.*, Ex. 8 at 13.)

17   Moments before Deputy Camacho testified, the prosecutor disclosed that the deputy

18   was on administrative leave.  (Ans., Ex. 3, Vol. 11 at 7906.)  The trial court asked whether

19   the charges had ripened into a conviction, to which the prosecutor replied, " No."  (*Id.*)

20   Defense counsel asked the prosecutor if it was a misdemeanor, and the prosecutor said:

21   "That I'm assuming, but I can ask."  (*Id.*)  The trial court ruled that:  "It's not moral turpitude

22   conduct, and you'd have to prove the conduct itself unless there's a . . . felony conviction.

23   So [the impeachment evidence] does not appear admissible."  (*Id.*)  Petitioner now, without

24   citing any authority, asserts that Camacho was charged with felony battery.

25   Because this issue was raised first on collateral review to the state supreme court, this

26   Court will conduct an independent review of the record to determine whether the state court

27   decision is objectively unreasonable.  Even if petitioner can shown the trial court's

28

United States District Court

For the Northern District of California

evidentiary error deprived him of due process, the Court must consider whether, "in light of the record as a whole, . . . [the error] had a substantial and injurious influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (defining prejudicial error).

Habeas relief is not warranted here. First, the impeachment evidence, if it had been admitted, would not apply to Snell, who also heard petitioner's comments. Second, the deputies' testimony had no perceptible effect on the jury's verdict, which was for manslaughter, not murder. Third, evidence of petitioner's guilt was strong. Ramirez, the victim, received blunt force injuries on his head, and four gunshot wounds – three in the abdomen, and one in the back. Before the shooting, neighbors testified that they heard the victim pleading for someone not to kill him. Sandoval, the sole eyewitness, testified that he heard petitioner thrice shoot the victim, who then fled to Sandoval, in front of whom petitioner began beating the victim with his gun, eventually fatally shooting him in the back.

Furthermore, petitioner's defense was not strong. First, his claim that Ramirez brought the gun to the drug deal was undercut dramatically by the testimony of firearm examiner Steven O'Clair, who matched the bullets that hit Ramirez to petitioner's gun, the only gun found at the scene. Terry Suchan testified that he had sold petitioner this same gun prior to the shooting. Second, his claim that the shooting was an accident resulting from a struggle for the gun was undermined greatly by the testimony of Scott Armstrong, a specialist from the Department of Justice, who testified that owing to the gun's safety mechanism, only a trigger pull could discharge the weapon. O'Clair also testified that the fourth shot required more than five pounds of trigger pull to discharge.

Based on an independent review of the record, petitioner has not shown the absence of a reasonable basis for the state court to deny relief. Nor is there anything in the record to show that the decision was objectively unreasonable. Accordingly, this claim is DENIED.

**D.     Alleged Judicial Misconduct**

1    Petitioner claims that the trial court's interruption of defense counsel's cross-

2    examination of the prosecution's witness (Sandoval) constituted judicial misconduct.  He

3    contends this interruption unfairly upheld Sandoval's credibility, and impugned defense

4    counsel.  Petitioner also claims that the trial court betrayed its prejudice and bias against

5    petitioner when, in and outside the jury's presence, it reminded defense counsel to adhere to

6    the court's evidentiary rulings.

7    The state appellate court rejected these claims.  The "ambiguous and confusing"

8    questions and responses warranted judicial intervention:

> Here, both the cross-examination questions by [petitioner]'s counsel and
> Sandoval's responses with respect to a supposed felony or robbery charge or
> conviction in Fresno County were ambiguous and confusing.  [Petitioner]'s
> counsel persisted with this line of questioning to discredit Sandoval's statement
> that he had no problems with the law aside from his Santa Clara County arrest.
> [Footnote omitted.]  Outside the jury's presence, the prosecuting attorney
> confirmed that Sandoval's rap sheet did not show even that Sandoval had been
> booked on, no less convicted of, robbery, in the Fresno case.  [Petitioner]'s
> counsel did not proffer any evidence that Sandoval actually had been arrested
> for, or charged or convicted with, robbery in Fresno under any name; he merely
> asserted that he had "information" from "street people."  He did not show that
> the line of questioning produced more than speculative evidence based upon
> witness confusion or misunderstanding.

16   (Ans., Ex. 8 at 64–67.)  As to the second issue, even if the trial court's comments in front of

17   the jury implied that defense counsel had failed to follow the rules, the state appellate court

18   reasoned "it was a brief, isolated comment and not part of a pattern of disparagement of

19   defense counsel and favoritism toward the prosecution."  (*Id.*)

20   It is generally appropriate for a trial judge to participate in the examination of

21   witnesses for the purpose of clarifying the evidence, encouraging counsel's compliance with

22   evidentiary rulings, controlling the orderly presentation of the evidence, and preventing

23   undue repetition of testimony.  *United States v. Morgan*, 376 F.3d 1002, 1008 (9th Cir.

24   2004).  A trial judge's participation oversteps the bounds of propriety and deprives the

25   parties of a fair trial only when the record discloses actual bias or leaves the reviewing court

26   with an abiding impression that the judge's remarks and questioning projected to the jury an

27   appearance of advocacy or partiality.  *United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir.

28

2001).

Here, the record fails to support petitioner's claim. As to the first claim, rather than showing bias, the record reflects that the trial court clarified evidence, prevented the undue repetition of testimony, and directed defense counsel to comply with its evidentiary rulings. The second claim that the trial court impugned the character of defense counsel similarly fails. Any comments made outside the jury's presence cannot have given the jury the impression of advocacy or partiality. As for the comments made in front of the jury, the record supports the state appellate court's determination that such comments were brief, isolated, and showed no lack of impartiality. On such a record, the state appellate court's rejection of petitioner's claim was not only reasonable, and therefore entitled to AEDPA deference, but it was constitutionally correct. Petitioner's claim is DENIED.

**E.      Faretta Motions**

Petitioner claims that the trial court violated his right to self-representation. The relevant facts are as follows. Four individuals represented petitioner at various times before and during trial. After each appointment, the trial court continued the trial.   Petitioner brought a number of unsuccessful motions to change counsel, "unsuccessful *Faretta* [self-representation] motions, [and] a motion to be appointed as co-counsel." (Ans., Ex. 8 at 23–24.) At times, petitioner refused to cooperate with his attorney, and his outbursts required that he be escorted from the courtroom. (*Id.* at 23.) In denying one *Faretta* motion, the court stated if you were misbehaving "We could have a trial without you if you're represented by an attorney, but if you're . . . [y]our own lawyer then it would really bring things to a standstill." (Ans., Ex. 2 at Vol. 11 at 3338.) The court granted a later *Faretta* motion, and appointed defense counsel as a co-counsel until petitioner requested for defense counsel to be reappointed days before trial. Because this issue was raised first on collateral review to the state supreme court, this Court will conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable.

A criminal defendant has a Sixth Amendment right to self-representation at trial.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1 *Faretta v. California*, 422 U.S. 806, 832 (1975).  There are restrictions on this right,

2 however.  "The right of self-representation is not a license to abuse the dignity of the

3 courtroom."  *Id.* at 834, n.46.  In fact, a trial court "may terminate self-representation by a

4 defendant who deliberately engages in serious and obstructionist misconduct."  *Id.* (citing

5 *Illinois v. Allen*, 397 U.S. 337 (1970)).  Also, a request to represent oneself "need not be

6 granted if it is intended merely as a tactic for delay."  *United States v. Flewitt*, 874 F.2d 669,

7 674 (9th Cir. 1989).  "A court may consider events preceding a motion for self-representation

8 to determine whether the request is made in good faith or merely for delay."  *United States v.*

9 *George*, 56 F.3d 1078, 1084 (9th Cir. 1995).  In *George*, the court held the trial court's

10 "findings provide[d] ample basis for its conclusion that [the defendant's] motion was made

11 for purposes of delay.  *Id.*

12     In the instant matter, as in *George*, the trial court had ample basis to conclude that

13 petitioner's *Faretta* requests were made as a tactic for delay.  Like the *George* defendant,

14 petitioner's pre-trial conduct caused substantial delay:  petitioner delayed his trial by two

15 years through the filing of a great many motions, his outbursts disrupted hearings, and he

16 often refused to cooperate with his own defense counsel.  Such a record provided sufficient

17 reason for the trial court to deny petitioner's *Faretta* motions.  Indeed, his final *Faretta*

18 motion was granted whereupon he waived his *Faretta* right, and asked for appointed trial

19 counsel.  Based on an independent review of the record, petitioner has failed to show that

20 there was no reasonable basis for the state court to deny relief.  Nor is there anything in the

21 record to show that the decision was objectively unreasonable.  Accordingly, this claim is

22 DENIED.

23     **F.    Denial of Continuance**

24     Petitioner claims that the trial court's denial of a continuance deprived him effective

25 assistance of counsel and his right to due process.  More specifically, he contends that the

26 denial prevented defense counsel from using a defense expert's ballistics report at trial.

27

28

United States District Court

For the Northern District of California

During trial, after the appointment of petitioner's fourth attorney, the trial court set the trial date for June 18, 2007. On May 31, the trial court continued the trial until July 2, 2007, so that the defense ballistics expert would have more time to review the evidence. During an August 17 continuance hearing, the court reset the trial until October 1, 2007. On September 14, the trial court continued trial until October 16, 2007. On October 16, the trial was continued until January 28, 2008. After the court granted petitioner's *Faretta* motion, the court again reset the trial for February 11, 2008. On January 25, petitioner argued for a continuance at a hearing, and the court continued the hearing on the continuance. On February 7, the court denied the continuance, and granted petitioner's request to have advisory counsel reappointed as defense counsel. The trial court reasoned that petitioner had adequate time to evaluate the relevant evidence. The state court refused to allow further ballistics testing because "examination of this evidence was premised upon nothing other than the wildest speculation that it might turn up something useful." In sum, nine continuances were granted. (Ans., Ex. 8 at 22–29.)

The state appellate court rejected this claim because petitioner did not show a reasonable probability that but for the ruling the outcome would have been different. More specifically, defense counsel had ample opportunity to prepare for trial. (*Id.* at 36.)

The Supreme Court accords trial courts wide latitude "in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (internal citations omitted). To establish a constitutional violation based on the denial of a continuance motion, a petitioner must show that the trial court abused its discretion, which will be found if, after carefully evaluating all relevant factors, the denial was arbitrary or unreasonable. *See Armant v. Marquez*, 772 F.2d 552, 556 (9th Cir. 1985). The relevant factors are: (1) whether the continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the

11-1005 RS (PR)
ORDER DENYING PETITION

defendant.  *See U.S. v. Mejia*, 69 F.3d 309, 314 (9th Cir. 1995).  The ultimate test remains whether the trial court abused its discretion through an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay."  *Houston v. Schomig*, 533 F.3d 1076, 1079 (9th Cir. 2008) (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)) (internal quotation marks omitted).

Habeas relief is not warranted here.  All *Mejia* factors weigh squarely against petitioner.  As to the first and second, it was reasonable to conclude that witnesses, the court, counsel, and the parties would have been inconvenienced if there was another continuance. Nine prior ones had been granted.  As to the third and fourth factors, petitioner has not shown legitimate reasons for delay, which was apparently his fault, especially considering that prior continuances had been granted to allow him to prepare his defense and witnesses.  Moreover, petitioner's conduct, ranging from uncooperative to hostile, prevented his advisory counsel from preparing.  An additional continuance was unlikely to serve a useful purpose.  Finally, petitioner has not shown prejudice.  As discussed previously the evidence against petitioner was strong, and petitioner has pointed to no reason that a further continuance would have improved his self-defense argument.  In sum, there has been no showing that the trial court denied the continuance upon an unreasoning and arbitrary insistence on expeditiousness in face of a justifiable request for a delay.  Accordingly, this claim is DENIED.

Petitioner's claim that the trial court's denial of a continuance resulted in ineffective assistance of counsel is also meritless.  Petitioner made no showing that a ballistics examination would have yielded any evidence; his empty allegations will not suffice.  This undetailed, conclusory claim must be DENIED because it does not meet the specificity requirements of *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

United States District Court

For the Northern District of California

### III.     Assistance of Counsel

Petitioner contends that his appointed defense counsel rendered ineffective assistance. In particular, petitioner claims that defense counsel failed to (A) prepare adequately for trial; (B) file a "petition for a writ of prohibition"; (C) recall the prosecution's expert witness; and (D) file an extraordinary writ when the court denied the continuance motion and limited defense expert's access to evidence.

Before trial, on November 29, 2007, petitioner requested to represent himself.  After warning him that he would get no special treatment, the trial court granted petitioner's request, appointed defense counsel as advisory counsel, and told him to keep abreast of the case.  Trial was set for February 11, 2008.  On February 7, 2008 petitioner requested that the court reappoint defense counsel, who then argued that he was not prepared for trial.  The trial court replied "[petitioner] was going to represent himself and he's asked to have you in whatever shape you're in."  (Ans., Ex. 8 at 30.)

The state appellate court concluded that petitioner has not "shown that . . . under *Strickland* . . . [defense counsel was] inadequately prepared for trial."  (*Id*. at 32.)  Also, he "cannot claim ineffective assistance of counsel for inadequate pretrial preparation by . . . himself."  (*Id.* n.7.)

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a habeas petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (citing *Strickland*, 466 U.S. at 693).

11-1005 RS (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California

### A. Expert Preparation

Petitioner alleges that defense counsel failed to manage his ballistics expert properly. In particular, he claims that defense counsel delayed in replacing a defective DVD containing crime scene photos which counsel had given to the expert. This delay, petitioner asserts, prejudiced his defense by preventing him from using the expert to support a self-defense claim, and to rebut the prosecutor's expert.

Habeas relief is not warranted here. Petitioner fails to show that the expert would have discovered exculpatory evidence with more time. Instead, petitioner speculates that absent defense counsel's delay, the expert may have found something useful for his defense. Mere conjecture is insufficient to establish prejudice. *See Bible v. Ryan*, 571 F.3d 860, 871 (9th Cir. 2009). Accordingly, the state appellate court's ruling was not unreasonable, and petitioner's claim must be DENIED.

### B. Double Jeopardy

Petitioner alleges that defense counsel rendered ineffective assistance because he did not "petition for a writ of prohibition . . . to prevent further criminal proceedings." (Pet. at 7–8.) His argument is that the court placed him twice in jeopardy, and that any "diligent advocate would have file[d] the petition." (*Id.*) Because this issue was raised first on collateral review to the state supreme court, this Court will conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable.

As shown above, petitioner was not placed twice in jeopardy. Counsel, then, had no reason to file a petition for an extraordinary writ. Petitioner, accordingly, has not shown either *Strickland* prong. His claim therefore must be DENIED.

### C. Failure to Recall the Prosecution's Witness

Petitioner argues counsel rendered ineffective assistance at trial when he only cross examined the prosecution's expert witness (Hain) instead of recalling him. Hain stated the victim's wounds "could have [occurred] many ways." (Trav. at 51.) At this point, petitioner argues that defense counsel prejudiced petitioner's defense by failing to ask whether the

11-1005 RS (PR)
ORDER DENYING PETITION

evidence was consistent with petitioner's self-defense account.

Petitioner has failed to show either *Strickland* prong. As to the first, defense counsel may have been wise – in addition to being competent – to abstain from pursuing petitioner's suggested line of questioning. The witness's answer certainly left open the possibility that the wounds could have occurred during a defensive attack. The next answer, however, may have excluded that possibility. Defense counsel, in the exercise of reasonable professional judgment, may have stopped questioning so at to avoid weakening petitioner's self-defense claim. Because counsel's action was reasonable, and no prejudice has been shown, the state court's decision was also reasonable and is entitled to AEDPA deference. This claim is DENIED.

### D.    Failure to File Petitions for Extraordinary Writs

#### 1.    Evidentiary Rulings

Petitioner contends that defense counsel rendered ineffective assistance when he failed to file a petition for an extraordinary writ challenging the trial court's ruling regarding his expert witness (Barnett) having access to the prosecution's evidence. The trial court directed the prosecutor to make evidence available to Barnett provided that testing be done under the prosecution's supervision. On direct appeal, the state appellate court affirmed the trial court's evidentiary ruling. The state appellate court found that the prosecutor's concerns about preserving the evidence's integrity to be reasonable. Accordingly, it denied petitioner's claims that the trial court had erroneously denied him access to evidence.

Petitioner's claim is inadequately detailed. He has not shown how such a meritless writ would succeed. Since petitioner failed to show that there is a reasonable probability that but for defense counsel's failure to file the writ, the outcome would be different, this claim must be DENIED.

#### 2.    Challenging the Continuance

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Petitioner contends that defense counsel should have challenged the trial court's denial of his motion to continue with an extraordinary writ. Petitioner contends that defense counsel was not prepared to go to trial. As noted above, petitioner has not shown that a continuance was warranted. No reason arose therefore to file a petition for an extraordinary writ. Petitioner has failed to show either a deficient performance or prejudice. Moreover, petitioner has not shown why the appellate court would have granted a petition for a writ when it denied this very claim on direct review. This claim is DENIED.

**E.      Failure to Object to the Admission of Tattoo Evidence**

Petitioner contends that defense counsel rendered ineffective assistance when he failed to object to the admission of the tattoo evidence on grounds that it was overly prejudicial and denied him due process. Petitioner also contends that defense counsel was ineffective by failing to request a limiting instruction as to the tattoo evidence. The state appellate court rejected petitioner's claims that his tattoo was overly prejudicial. (Ans., Ex. 8 at 31.)

Habeas relief is not warranted here. Petitioner has not shown that such an objection would have been successful. The state appellate court declared that the tattoo was permissible "circumstantial evidence of his state of mind." (*Id.* at 31.) Petitioner shows nothing to overcome the state appellate court's determination that such evidence was admissible. Consequently, he cannot show a deficient performance.

Petitioner also has not shown prejudice. He admitted killing the victim during a botched methamphetamine sale. He cannot, then, show how "Thug for Life" would have impugned him in the eyes of the jury more than those facts. Without a showing of prejudice, petitioner's claim must be DENIED.

**F.      Crime Scene Photos**

Petitioner claims that defense counsel rendered ineffective assistance by failing to

introduce crime scene photos at trial.  One photo depicted petitioner's blood-soaked shirt.
Another photo was of the wall of the room in which petition admittedly shot the victim.
The final picture showed a hole in the wall through which a bullet had travelled.  Petitioner
argues that these photos demonstrated that he shot the victim in self-defense, and therefore, a
reasonable counsel would have presented them at trial.  Failure to introduce these photos,
petitioner opines, resulted in the jury only partially accepting his self-defense claim, thereby
prejudicing his defense.  The state supreme court summarily denied these claims.

Petitioner has not established that defense counsel's performance fell below an
objective standard of reasonableness under professional norms.  First, petitioner does not
explain how these pictures supported his defense.  Rather, petitioner's argument relies on his
unsupported assumption that the pictures are exculpating.  Petitioner's disagreement with
defense counsel over trial tactics is insufficient to overcome the presumption that counsel's
decisions were the result of reasonable trial strategies.  After an independent review of the
record, the state court's denial of this claim is reasonable.  Petitioner's claim is DENIED.

## IV.    Assistance of Appellate Counsel

Petitioner claims that appellate counsel failed to raise relevant issues on appeal.
Specifically, petitioner asserts that appellate counsel ought to have raised all claims that
petitioner now raises for habeas relief.

Claims of ineffective assistance of appellate counsel are reviewed according to the
standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Miller v. Keeney*, 882
F.2d 1428, 1433 (9th Cir. 1989).  A defendant, therefore, must show that counsel's advice
fell below an objective standard of reasonableness and that there is a reasonable probability
that, but for counsel's unprofessional errors, he would have prevailed on appeal.  *See id.* at
1434 n.9 (citing *Strickland*, 466 U.S. at 688, 694).  The state supreme court summarily
denied these claims.

Habeas relief is not warranted here.  The claims raised in the instant petition
encompass the same ones for which petitioner sought review in state court.  Because all the

claims discussed above lack merit or otherwise do not warrant habeas relief, appellate counsel cannot have rendered ineffective assistance by failing to raise them. As those claims are lacking, petitioner cannot show a reasonable possibility that but for appellate counsel's actions, the outcome of the proceeding would have been different. This claim is DENIED.

## V.   Alleged Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct by failing to make evidentiary disclosures. When a prosecutor's misconduct renders a trial fundamentally unfair, it violates a defendant's due process rights. *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

### A.   Presenting Allegedly Perjured Testimony

Petitioner claims that the prosecutor introduced perjured testimony. In sum, he contends that a defense witness Timothy Menezes, a Monterey County sheriff's deputy, contradicted the testimony of Camacho and Snell. To prevail on this sort of claim, petitioner must show that "the prosecution knew, or should have known," that the testimony was false. *United States v. Agurs*, 427 U.S. 97, 103 (1976). Prosecutors will not be held accountable for discrepancies in testimony where there is no evidence from which to infer prosecutorial misconduct. *United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995) (no evidence of prosecutorial misconduct where discrepancies in testimony could as easily flow from errors in recollection as from lies).

Petitioner has made no such showing here. In any trial, defense witnesses are expected to give evidence that conflicts with that presented by the prosecution witnesses. The mere existence of a conflict is not sufficient to show that the prosecutor knew or should have known that the testimony was false. That Camacho and Snell corroborated each other bolsters this conclusion. Accordingly, the state court's decision was reasonable, and is entitled to AEDPA deference. The claim is DENIED.

### B.   Disclosure

Petitioner contends that the prosecutor suppressed favorable clothing evidence.

United States District Court

For the Northern District of California

1   Pursuant to a court order, the prosecutor allowed petitioner access to this evidence, but

2   required the prosecution's representative to be present.  The state supreme court summarily

3   denied these claims.

4

5       The prosecution must disclose material evidence "favorable to an accused."  *Brady v.*

6   *Maryland*, 373 U.S. 83, 87 (1963).  In order to establish a *Brady* violation, petitioner must

7   show that:  (1) the evidence at issue was favorable to the accused, either because it is

8   exculpatory or impeaching; (2) the evidence had been suppressed by the prosecution, either

9   willfully or inadvertently; and (3) prejudice ensued.  *Banks v. Dretke*, 540 U.S. 668, 691

10  (2004).

11      Habeas relief is not warranted here for the simple fact that the prosecution made the

12  evidence available to the defense, rather than suppressing it.  Having failed to show this

13  *Brady* element, the claim must be DENIED.

14      **C.      Deputy Camacho's Charges**

15      Petitioner contends that the prosecutor also violated *Brady* by failing to disclose the

16  arrest history of Deputy Camacho.  Petitioner argues that if the prosecutor had fully disclosed

17  Deputy Camacho's arrest history, he could have used it to impeach that deputy.

18      Here, the prosecutor did not withhold evidence of Deputy Camacho's arrest.  After a

19  pre-trial evidentiary hearing, but before Deputy Camacho testified, she disclosed that Deputy

20  Camacho was placed on administrative leave due to his domestic violence arrest.  The

21  prosecutor gave the defense sufficient time to attempt to use this evidence, but the trial court

22  ruled it inadmissable since Deputy Camacho had no convictions.  As petitioner fails to

23  establish that the prosecutor withheld evidence, petitioner's claim must be DENIED.

24

25

26                                  **CONCLUSION**

27

28

1   The state appellate court's denial of petitioner's claims did not result in a decision that

2   was contrary to, or involved an unreasonable application of, clearly established federal law,

3   nor did it result in a decision that was based on an unreasonable determination of the facts in

4   light of the evidence presented in the state court proceeding.  Accordingly, the petition is

5   DENIED.

6   A certificate of appealibility will not issue.  Reasonable jurists would not "find the

7   district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

8   *McDaniel*, 529 U.S.  473, 484 (2000).  Petitioner may seek a certificate of appealability from

9   the Court of Appeals.  The Clerk shall enter judgment in favor of respondent and close the

10   file.

11   **IT IS SO ORDERED.**

12   DATED:  October 10, 2013

RICHARD SEEBORG
United States District Judge